# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KATHEY BLACKWELL,

                Plaintiff,

v.                                        Case No. 06-C-1296

MICHAEL J. ASTRUE,[1] Commissioner
of the Social Security Administration,

                Defendant.

# DECISION AND ORDER

## NATURE OF CASE

The plaintiff, Kathey Blackwell, commenced this action on December 19, 2006, seeking judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner), pursuant to 42 U.S.C. § 405(g), denying her applications for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act. The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General L.R. 73.1 (E.D. Wis.). The plaintiff's appeal will be addressed herein.

## PROCEDURAL HISTORY

On December 27, 2002, the plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she became disabled on December 31, 1990, which was amended to March 10, 2002, due to osteoarthritis, residuals from a fracture of the lower

---

[1]The court has amended the caption to substitute Michael J. Astrue, Commissioner of the Social Security Administration, as the defendant in this case. On February 12, 2007, Michael J. Astrue became Commissioner of the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d)(1) and the last sentence of 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

extremity, diabetes mellitus, hepatitis C, depression and substance abuse. The plaintiff's applications were denied initially and upon reconsideration. Pursuant to the plaintiff's request, a video hearing was held on January 27, 2006, before an Administrative Law Judge (ALJ) in Houston, Texas. The plaintiff, who was represented by counsel, appeared at a teleconference center in Milwaukee, Wisconsin. Nancy Tarrant, M.D., a medical expert specializing in psychiatry, and Lorie McQuade, a vocational expert, also appeared and testified.

In a June 27, 2006, decision, the ALJ found that the plaintiff has not engaged in substantial gainful activity at any time relevant to his decision and that she had the following severe impairments: osteoarthritis, residuals from a fracture of the lower extremity, diabetes mellitus, hepatitis C, depression, and substance abuse. The ALJ also found that the plaintiff did not have an impairment or combination of impairments that meets of medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I, specifically Listings 1.00, 9.00 and 12.00.

The ALJ further found that the plaintiff had the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, to stand and/or walk about six hours in an eight-hour workday, and to sit about six hours in an eight-hour workday with the option to alternate between standing, walking and sitting every hour. He also found that the plaintiff had limited near visual acuity, that she could not work around hazards or common dangers, and that she can understand, remember and carry out detailed instructions, use judgment, respond appropriately to supervisors, co-workers and usual work situations. The ALJ stated that the plaintiff can deal with changes at a routine work setting and that she should have no more than occasional contact with the public.

The ALJ further determined that the plaintiff is capable of performing her past relevant work as a clerk typist, loan specialist, CRT operator and data entry clerk. Because the ALJ

determined that the plaintiff is capable of performing past relevant work, the ALJ did not consider whether the plaintiff is capable of performing other work, considering her residual functional capacity, age, education and work experience.  See 20 C.F.R. § 404.1520(a)(4) (if the ALJ can find that the plaintiff is not disabled at a step, the ALJ need not go on to the next step).  The ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act.   The ALJ's decision became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review.

The history of this case is well summarized in the record.  Consequently, the court will only engage in a limited discussion of the facts relevant to this decision.

## APPLICABLE LAW

The Social Security Act authorizes disability benefits for those who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  In order to found disabled, a plaintiff must demonstrate that his physical or mental impairments prevent him from doing not only his previous work, but any other substantial gainful employment which exists in the national economy considering his age, education, and work experience.  42 U.S.C. § 423 (d)(2)(A).

In order to determine whether a plaintiff is so disabled, the ALJ is required to evaluate in sequence: 1) whether the plaintiff is currently employed; 2) whether the plaintiff has a severe impairment; 3) whether his impairment meets or equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, which the Commissioner acknowledges to be conclusively disabling; 4) whether the plaintiff can perform his past relevant work; and 5) whether the plaintiff is capable of performing any other work existing in significant numbers in the national economy

given his age, education and work experience.  See  Clifford v. Apfel, 227 F.3d 863, 868 (7th Cir. 2000); Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995); Wolfe v. Shalala, 997 F.2d 321, 322-3 (7th Cir. 1993).  If a plaintiff satisfies steps one, two and three, he will automatically be found disabled.  If a plaintiff satisfies steps one and two, but not three, then he must satisfy step four.  Once step four is satisfied, the burden shifts to the Commissioner to establish that the plaintiff is capable of performing work in the national economy.  Knight, 55 F.3d at 313.  The plaintiff bears the burden at steps one through four, after which at step five, the burden shifts to the Commissioner.  Briscoe v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005);  Young v. Barnhart, 362 F.3d 995, 1000 (7th Cir. 2004).  The process is sequential, and if the ALJ can make a conclusive finding at any step that the plaintiff either is or is not disabled, then the ALJ need not progress to the next step.  20 C.F.R. § 404.1520(a)(4).

To expedite the carrying of this burden, the Commissioner has promulgated 20 C.F.R. Part 404, Subpart P, App. 2, the "Medical-Vocational Guidelines," commonly referred to as the "grid."  The rules of the "grid" reflect the analysis of the various vocational factors (that is age, education and work experience) in combination with the individual's residual functional capacity (his maximum sustained work capability for sedentary, light, medium, heavy or very heavy work) in evaluating the individual's ability to engage in substantial gainful activity in other than his vocationally relevant past work.

Where the findings of fact, made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled.  See Haynes v. Barnhart, 416 F.3d 621, 627 (7th Cir. 2005).  However, each of these findings of fact is subject to rebuttal and the individual may present evidence to refute said findings.  Where any of the findings of fact do not coincide exactly with the corresponding criteria of a rule, the rule does

-4-

not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled. Id. at 627-28.

Nonetheless, the Commissioner is permitted to conclude that a nonexertional limitation, while present, has no significant impact on an individual's capacity to perform the range of work he is otherwise exertionally capable of performing, making proper application of the grid. Caldarulo v. Bowen, 857 F.2d 410, 413 (7th Cir. 1988) (citing Smith v. Schweiker, 735 F.2d 267, 272 n.3 [7th Cir. 1984]). In any event, there must be reliable evidence of some kind which would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available. Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 540 (7th Cir. 1992) (citing Warmoth v. Bowen, 798 F.2d 1109, 1112 [7th Cir. 1986]).

Review of the Commissioner's decision is limited. Scheck v. Barnhart, 357 F.3d 697, 699 (7th Cir. 2004). The Social Security Act specifically provides that the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. Jones v. Shalala, 10 F.3d 522, 523 (7th Cir. 1993); see 42 U.S.C. § 405(g). "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Blakes v. Barnhart, 331 F.3d 565, 568 (7th Cir. 2003); see also, Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

In reviewing the decision of the Commissioner, this court is obligated to review all the evidence contained in the record and such review "must be more than an uncritical rubber stamp." Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). This court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. Powers v. Apfel, 207 F.3d 431, 434 (7th Cir. 2000). However, even if substantial evidence

supports the Commissioner's findings, this court may reverse if the ALJ committed an error of law.  White v. Apfel, 167 F.3d 369, 373 (7th Cir. 1999).

## ANALYSIS

On appeal, the plaintiff challenges the ALJ's findings at step four – the determination of residual functional capacity (RFC) and the plaintiff ability's to perform her past relevant work, raising five separate arguments.  First, the plaintiff asserts that the ALJ failed to comply with Social Security Ruling (SSR) 00-4P by failing to determine whether the vocational expert's testimony was consistent with the Dictionary of Occupational Titles (DOT).  Second, the plaintiff contends that the ALJ failed to submit a proper hypothetical question to the vocational expert.  Third, the plaintiff maintains that the ALJ improperly evaluated the opinion of the plaintiff's treating psychiatrist and failed to follow 20 C.F.R. § 1527(d) in determining the appropriate weight to give the opinion.  Fourth, the plaintiff asserts that the ALJ failed to properly evaluate her residual functional capacity pursuant to SSR 96-8P.  Finally, the plaintiff maintains that the ALJ failed to properly evaluate the plaintiff's credibility pursuant to SSR 96-7p.

**1.     Whether the ALJ Improperly Evaluated the Opinion Testimony of the Plaintiff's Treating Physician.**

The plaintiff contends that the ALJ improperly evaluated the opinion of the treating psychiatrist by failing to analyze portions of the opinion, mischaracterizing the opinion and failing to follow 20 C.F.R. § 1527(d) in determining the appropriate weight to give the opinion.  The opinion of a treating doctor who has examined the plaintiff is generally given more weight than the opinion of a doctor who has not examined the plaintiff.  20 C.F.R. § 1527(d).

"Treating source opinions must be given special consideration in social security cases."  Patterson v. Barnhart, 428 F.Supp.2d 869, 882 (E.D. Wis. 2006) (citing Dominguese v. Masanari, 172 F.Supp.2d 1087, 1100 [E.D. Wis. 2001]).  If the treating doctor's opinion is well

supported by the medical evidence, including clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence, "the ALJ must afford such opinions controlling weight." Patterson, 428 F.Supp.2d at 843 (citations omitted). The ALJ may not simply reject the treating source's opinion if he finds that it is not entitled to controlling weight. Id. (citing SSR 96-2p). Rather, the ALJ must evaluate the weight of the opinion by looking at the length, nature and extent of the treatment relationship of the plaintiff and the physician, the degree to which the opinion is supported by the evidence and its consistency with the record as a whole, whether the doctor is a specialist and "other factors." Patterson, 428 F.Supp.2d at 883 (quoting 20 C.F.R. § 404.1527[d]). "Regardless of the weight the ALJ ultimately gives the treating source opinion, she must always give good reasons for her decision." Wates v. Barnett, 274 F.Supp.2d 1024, 1034 (E.D. Wis. 2003) (quoting 20 CFR § 404.1527[d][2]).

Dr. Steven Ortell is the plaintiff's treating psychiatrist. Dr. Ortell diagnosed the plaintiff as having bipolar disorder, type 1, with cocaine dependency in remission. (Tr. 279). He also diagnosed diabetes, hepatitis C, musculoskeletal problems in both the back and left leg and a Global Assessment of Functioning (GAF) of 35.[2] He noted that the side effects of the plaintiff's medications caused drowsiness, sedation, dizziness, nausea and vomiting. (Tr. 281).

On June 6, 2005, Dr. Ortell completed a Mental Impairment Medical Assessment form in which he indicated that the plaintiff experienced symptoms which would interfere with attention and concentration "at least frequently" during a typical workday. (Tr. 280). The doctor further indicated that if the plaintiff was placed in a competitive job, the plaintiff would be unable to perform detailed, complicated or fast paced tasks or be exposed to the public or have close

---

[2]The Global Assessment of Functioning (GAF) is a rating of overall psychological functioning. A rating of 31-40 denotes some impairment in reality testing or communication or major impairment in several areas, such as work or school or family relations, judgment, thinking or mood (e.g. neglects family, unable to work, etc.). American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. text edition 2000).

interaction with co-workers/supervisors. (Tr. 281). Dr. Ortell found the plaintiff seriously limited, but not prohibited, from interacting appropriately with the general public, working in coordination with or in proximity to others without being unduly distracted or distracting of co-workers, completing a normal workday and workweek without interruption from psychologically based symptoms, and performing routine repetitive work at a consistent pace without an unreasonable number and length of rest periods. (Tr. 283). He also found that the plaintiff was seriously limited in her ability to accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in a routine work setting and deal with the normal work stress of even routine, repetitive low stress jobs. Dr. Ortell also indicated that the plaintiff was unable to deal with the stress of semi-skilled and skilled work and, therefore, was unable to meet competitive standards for such employment. (Tr. 283).

Dr. Ortell found that the plaintiff had "moderate" restrictions in activities of daily living, "moderate" difficulties in maintaining concentration, persistence and one or two repeated episodes of decompensation, each of extended duration as a result of her mental disorder. (Tr. 282). Keith Bauer, Ph.D., the state agency consultant, made the same assessments in the Psychiatric Review Technique (PRT) form, which he completed on December 18, 2003. (Tr. 254). In the PRT, Dr. Bauer determined that the plaintiff had "moderate" restrictions in activities of daily living, "moderate" difficulties in maintaining social functioning, "moderate" difficulties in maintaining concentration, persistence or pace that result in failure to complete tasks in a timely manner, and one or two episodes of deterioration or decompensation, each of extended duration. (Tr. 244).

Dr. Bauer also completed a Mental Residual Functional Capacity Assessment form and determined that the plaintiff was "moderately limited" in her ability to carry out detailed instructions and in her ability to perform activities within a schedule, to maintain regular

attendance and to be punctual within customary tolerances. (Tr. 258). He further determined that she was "moderately limited" in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 259).

Jeremy Meyers, Ed.D. conducted a mental status evaluation of the plaintiff in December 2003, and diagnosed heroin dependence in full remission, mood disorder, depression with paranoid features and a GAF of 50. (Tr. 242). He noted that the plaintiff appeared "to be quite depressed, tearful and also rather suspicious." (Tr. 238). She was socially withdrawn and rather isolated with feelings of hopelessness. (Tr. 240-41). Dr. Meyer opined that the plaintiff appeared to have the ability to understand, remember and carry out simple instructions, as well as more complex instructions. He stated that the plaintiff should not have difficulty maintaining concentration and attention, "although work place demands, particularly if severe, will test her ability to comply. (Tr. 242). In his opinion, the plaintiff is unable to perform activities of daily living in a consistently timely manner. (Tr. 241).

The medical expert, Dr. Tarrand, a psychiatrist who testified at the hearing, concluded that "complex job instructions could be difficult for the plaintiff based on some impairment in her concentration" and that working around the public could pose some problems given the plaintiff's fear of other people. (Tr. 412). Dr. Tarrand also concluded that the plaintiff should not engage in commercial driving or work around dangerous machinery because of her medications. (Tr. at 412). She also stated that, in her opinion, the plaintiff had "moderate" restrictions in social functioning and in maintaining concentration, persistence and pace, but only "mild" restrictions on activities of daily living. (Tr. 411).

A psychiatric questionnaire completed on May 13, 2003, stated that the plaintiff reported that she usually experiences anxiety at home and in social settings. (Tr. 205). The plaintiff was

described as mildly anxious" and the consultant completing the questionnaire reported that her ability to understand, carry out and remember instructions may be impacted because of "memory problems" which "may border on forgetfulness." (Tr. 204, 206).

In addressing the plaintiff's non-exertional mental limitations, the ALJ stated that he agreed with the assessment of the state agency psychological consultant, Dr. Bauer, but he found that the plaintiff had "mild" restrictions on daily living based on unspecified "new evidence," including the testimony of the medical expert. (Tr. 18). Dr. Bauer, as well as Dr. Ortell, determined that the plaintiff had "moderate" restrictions in activities of daily living. The ALJ determined that the plaintiff can understand, remember and carry out detailed instructions, use judgment, respond appropriately to supervisors, co-workers and usual work situations, and deal with changes at a routine work setting. The ALJ further stated that the plaintiff should have no more than occasional contact with the public, and should do no work around hazards or common dangers which factored into determining the plaintiff's residual functional capacity.

The ALJ then stated that these "restrictions are mostly consistent with Dr. Ortell's *Medical Assessment Form* dated June 6, 2005." (Tr. 18). The ALJ stated that the evidence as discussed does not support Dr. Ortell's opinion that the plaintiff would be absent from work more than four days a month, or that she would be unable to be exposed to public contact or deal with the stress of semi-skilled and skilled work.

The court cannot reconcile the ALJ's statement that the restrictions as set forth by the ALJ are "mostly consistent" with Dr. Ortell's assessment. The ALJ determined that the plaintiff could understand, remember and carry out detailed instructions, but Dr. Ortell determined that the plaintiff would be unable to perform detailed or complicated tasks or fast paced tasks, such as on a production line. (Tr.281). Dr. Ortell stated that the plaintiff experiences symptoms which interfere with the attention and concentration needed to perform even simple work tasks

-10-

"at least frequently" during a typical workday.  (Tr. 280).  Moreover, Dr. Tarrand, the medical expert, testified that complex job instructions could be difficult for the plaintiff based on some impairment in her concentration.  (Tr. 412).  Both Dr. Tarrand, the state agency psychological consultant and Dr. Ortell all reported that the plaintiff had "moderate" restrictions with regards to concentration, persistence and pace.

The ALJ determined that the plaintiff could respond appropriately to supervisors and co-workers, but Dr. Ortell indicated that the plaintiff would be unable to be exposed to close interaction with co-workers or supervisors.  Dr. Ortell determined that the plaintiff would be seriously limited in accepting instructions and responding appropriately to criticism from supervisors and that she was seriously limited in her ability to work in coordination with or proximity to others without being unduly distracted or distracting co-workers.  (Tr. 283).

The ALJ also found that the plaintiff could deal with changes at a routine work setting and that she should have no more than occasional contact with the public.  However, Dr. Ortell opined that the plaintiff was seriously limited in dealing with normal work stress of even routine, repetitive low stress job and that she was similarly limited in interacting appropriately with the public.  Dr. Ortell also found that even a "minimal increase in the mental demands or change in environment" would be predicted to cause the plaintiff to decompensate.  (Tr. 282).

The court finds that the ALJ's restrictions were not mostly consistent with Dr. Ortell's medical assessment of the plaintiff.  Moreover, the ALJ failed to explain why he was not accepting the opinion of the treating physician, especially with regards to the plaintiff's ability to perform detailed to complex tasks and her ability to have close interaction with co-workers or supervisors.  The ALJ did not adequately evaluate Dr. Ortell's opinion utilizing the relevant factors.  See Patterson, 428 F.Supp.2d at 883; 20 C.F.R. § 404.1527(d).  In addition, he did not provide good reasons for discounting portions of Dr. Ortell's opinion.  The ALJ also concluded

that the plaintiff had "mild" restrictions in activities of daily living based on Dr. Tarrand's opinion and "new evidence." (Tr. 18). This "new evidence" is not revealed in the ALJ's decision.

This court is unable to determine what conclusion the ALJ would have reached if the ALJ had correctly explained how Dr. Ortell's opinion comports with the ALJ's finding of residual functional capacity. See Boiles v. Barnhart, 395 F.3d 421, 426 (7th Cir. 2005) (holding that the ALJ erred when he did not explain how other evidence in the record contradicted the treating physician's opinion); Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003) (holding that the ALJ did not adequately explain why the treating physicians were necessarily inconsistent with the medical evidence of record and that the contrary opinion of a non-examining physician, by itself, does not constitute substantial evidence to upset a treating physician's opinion). Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir.2000) (remanding for the ALJ to reevaluate whether treating physician's findings of disabling symptoms were entitled to controlling weight where the ALJ did not adequately explain why those findings were necessarily inconsistent with other medical evidence of record).

The court concludes that the ALJ failed to adequately evaluate Dr. Ortell's medical opinion and to articulate good reasons for rejecting his opinion. See Wates, 274 F.Supp.2d at 1034. Consequently, the case is remanded for reconsideration and clarification of the ALJ's findings with regards to plaintiff's treating physician, Dr. Ortell. On remand, the ALJ should consider the factors listed in 20 C.F.R. § 404.1527(d), such as length and frequency of treatment, the nature and extent of the treatment relationship, and the frequency of examination in determining what weight is to be given to the opinion of Dr. Ortell.

**2.     Whether the ALJ Improperly Evaluated the Plaintiff's Credibility.**

The plaintiff asserts that the ALJ failed to properly analyze her credibility pursuant to Social Security Ruling (SSR) 96-7p.  To the contrary, the Commissioner asserts that a thorough reading of the ALJ's decision shows that the ALJ met his burden in this case.

The ALJ must comply with SSR 96-7p in evaluating credibility.  Lopez v. Barnhart, 336 F.3d 535, 539-40 (7th Cir. 2003).  Social Security Ruling 96-7p establishes a two step process for evaluating the plaintiff's testimony and statements about symptoms such as pain, fatigue or weakness.  First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms.  If not, the symptoms cannot be found to affect the plaintiff's ability to do basic work activities.  SSR 96-7p.  Second, if an underlying physical or mental impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms has been shown, the ALJ must evaluate the intensity, persistence and limiting effects of the plaintiff's symptoms to determine the extent to which the symptoms limit her ability to work.

If the plaintiff's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the plaintiff's statements based on a consideration of the entire case record.  SSR 96-7p.  The ALJ's credibility determination is entitled to special deference because the ALJ is in the "best position to see and hear the witnesses and assess their forthrightness." Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).  Accordingly, an ALJ's credibility determination will not be disturbed unless the plaintiff can show that it is patently wrong.  Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003); Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000).

When making a credibility determination, an "ALJ may discount subjective complaints of pain that are inconsistent with the evidence as a whole. However, the ALJ may not disregard subjective complaints merely because they are not fully supported by objective medical evidence." Knight v. Chater, 55 F.3d 309, 314 (7th Cir. 1995). Rather, this is but one factor to consider, along with the plaintiff's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment other than medication; any measures the plaintiff has used to relieve the pain or other symptoms; and functional limitations and restrictions. 20 C.F.R. § 404.1529(c)(3); see also, SSR 96-7p.

Although SSR 96-7p does not require the ALJ to analyze and elaborate on each of these factors when making a credibility determination, the ALJ must sufficiently articulate his assessment of the evidence to assure the court that he considered the important evidence and to enable the court to trace the path of his reasoning. Patterson v. Barnhart, 428 F. Supp. 2d 869, 880 (E.D. Wis. 2006). The ALJ must provide "specific reasons for the finding on credibility, supported by the evidence in the case record." Id. (quoting SSR 96-7p). The ALJ cannot merely make a conclusory statement that the plaintiff's allegations have been considered and they are not credible. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

In this case, the plaintiff testified that she experiences nervousness, auditory hallucinations, insomnia and paranoia due to bipolar disorder. (Tr. 398). She has a loss of appetite, an inability to focus and loss of memory. (Tr. 398-99). She is depressed, has anxiety attacks and suicidal thoughts. (Tr. 404).

The plaintiff further testified that she has osteoarthritis involving the spine for which she uses a back brace and a fracture of the left lower extremity with a plate and screw in her left knee. (Tr. 392). The plaintiff's left leg hurts when she stands too long and during weather

-14-

changes and she experiences pain, swelling and throbbing. (Tr. 392). The plaintiff can walk about half of a block and stand for about 20 minutes, but after standing or walking, she has to sit down to elevate her leg over her heart due to the swelling and pain. (Tr. 392-93, 406). The plaintiff elevates her leg about twice a week for six hours. (Tr. 393, 406). She can lift between 15 and 20 pounds and sit for about 20 to 25 minutes before she needs to move around. (Tr. 402-03).

The plaintiff also experiences back pain, which on an average day averages between a six and a seven on a ten point scale, and on a bad day about an eight. (Tr. 393-94). She has about six bad days a month. (Tr. 394). During a bad day, the plaintiff puts on her back brace, takes medication and lies down for five to six hours. (Tr. 394). She attends physical therapy, but still has back pain. (Tr. 395). The pain medication makes the plaintiff drowsy and non-responsive. (Tr. 393).

The plaintiff also testified that she was diagnosed with hepatitis C which has caused hair loss, weight loss, loss of appetite, suicidal thoughts, insomnia, lack of focus and vomiting. (Tr. 395-96, 400). The plaintiff was on Interferon, but it made her sick. (Tr. 395-96, 400). Ultimately, the treatment was unsuccessful. (Tr. 396). The plaintiff was diagnosed with diabetes which causes blurry vision and foot pain. (Tr. 397, 406). The plaintiff's vision continues to worsen, despite prescription glasses. (Tr. 397).

As far as daily activities, the plaintiff washes dishes by sitting in a chair, but cannot do the laundry, vacuum or sweep. (Tr. 402). She cooks simple dishes that take 20 minutes or less to prepare. Id. She does not drive as much as she used to because she cannot stay focused on where she is going and she is scared to be around people. (Tr. 390). She watches television, but cannot remain focused. (Tr. 400). The plaintiff does not go to the grocery store because she is believes people are watching her and trying to do things to her. (Tr. 401). The

plaintiff testified that she generally spends all day inside her home unless she has a doctor's appointment. (Tr. 401). On Sundays, unless she is having a bad day, the plaintiff attends church and sits in the back away from the other congregants. (Tr. 401-02). The plaintiff admitted a history of drug use including heroin, marijuana and cocaine, but stated that she had been clean since 2001. (Tr. 399).

A Residual Physical Functional Capacity Assessment form completed by a medial consultant and dated December 22, 2003, stated that the plaintiff could occasionally lift and carry 20 pounds, frequently lift and/or carry ten pounds, stand and/or walk with normal breaks, for a total of about six hours in an eight-hour work day and sit with normal breaks for a total of about six hours in an eight-hour work day, indicating a "light" residual functional capacity. (Tr. 262). An earlier assessment stated that the plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds. (Tr. 178-79).

In his decision, the ALJ stated that "[a]fter considering the evidence of record, the undersigned finds that the plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the plaintiff's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (Tr. 16). The ALJ discussed the objective medical evidence, in particular, the treating notes from the Isaac Coggs Health Connection. According to the ALJ, the treatment notes demonstrated normal physical examinations with notations that the plaintiff's diabetes mellitus and back pain were under control and that she was walking an hour twice a week. (Tr. 16 [citing Tr. 198, 213, 214]).

A review of the cited evidence, however, offers contradictory notations of the plaintiff complaining of "persistent back pain" (Tr. 213) and that the plaintiff was walking twice a month. (Tr. 214). The ALJ stated that the plaintiff was walking weekly, climbing stairs and doing sit-ups

"which belies total disability." (Tr. 17 [citing Tr. 348, 353]). It is not clear whether the plaintiff was actually walking, climbing stairs and doing sit-ups or whether these notations are suggestions as part of a treatment plan. The majority of records demonstrate minimal walking and no exercise. See Tr. 200, 214-17, 311, 318, 339, 341, 343, 345, 348. The plaintiff testified at the hearing that she experienced significant back and leg pain and this pain is consistently noted in the medical records. See Tr. 213, 225, 330, 347, 349, 351.

Moreover, the side effects of the plaintiff's medications were not evaluated. The plaintiff complained of fatigue, insomnia, lack of focus, nausea and vomiting. (Tr. 191, 240, 290-92, 335, 361, 400). Dr. Ortell noted that the side effects of the plaintiff's medications, which may have implications for working, are drowsiness, sedation, dizziness, nausea and vomiting. The plaintiff testified that her pain medication makes her drowsy and non-responsive. (Tr. 393). The ALJ failed to properly address the plaintiff's pain which was supported by the medical evidence and he failed to address any aggravating or precipitating factors of her pain as required by SSR 96-7p.

The ALJ's credibility determination is basically conclusory. The ALJ failed to sufficiently articulate his assessment of the evidence and did not provide sufficient explanation for his conclusions. Therefore, the court is unable to trace the path of his reasoning. See Patterson, 428 F. Supp. at 880. For these reasons, the matter will be remanded for a re-evaluation of the plaintiff's credibility.

3.    **Whether the ALJ Failed to Comply with SSR 00-4P by Failing to Determine Whether the Vocational Expert's Testimony was Consistent with the Dictionary of Occupational Titles.**

The ALJ determined that the plaintiff is capable of performing past relevant work as a clerk typist, loan specialist, CRT operator and data entry clerk. The ALJ concluded that this work does not require the performance of work-related activities which are precluded by the

-17-

plaintiff's residual functional capacity. The plaintiff argues that the ALJ erred in failing to ask the vocational expert whether her testimony was consistent with the Dictionary of Occupational Titles (DOT) and contends that the vocational expert's testimony was in conflict with the DOT.

The Commissioner maintains that the ALJ did not have to question the vocational expert about possible inconsistencies between her testimony and the DOT. Rather, the Commissioner asserts that because the ALJ determined at step four that the plaintiff could perform her past relevant work as she actually performed it, he was not required to determine whether the vocational expert's testimony was consistent with the DOT. The Commissioner provides no support for this assertion.

Social Security Ruling 00-4P requires an ALJ, who takes testimony from a vocational expert about the requirements of a particular job, to determine whether the testimony is consistent with the DOT. As the court explained in Prochaska v. Barnhart, 454 F.3d 731, 735 (7th Cir. 2006):

> When a VE [vocational expert] or VS [vocational specialist] provides evidence about the requirements of a job or occupation, the adjudicator *has an affirmative responsibility* to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator *will*: [a]sk the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and [i]f the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

The vocational expert testified that the plaintiff could perform her past work as a clerk typist, data entry clerk, CRT operator (similar to a data entry clerk) and loan officer. (Tr. 414). These jobs require reasoning development levels of 3 and 5. See DOT, Vol. III, 203.362-010 (clerk typist: reasoning level 3); 203.582-054 (data entry clerk: reasoning level 3); 186.267-018 (loan officer: reasoning level 5). The DOT describes reasoning level one as carrying out simple instructions, reasoning level two as carrying out detailed, but uninvolved written or oral

instructions, and level three as carrying out instructions furnished in written, oral or diagrammatic form.

It appears that the DOT's requirements for a reasoning level of three require a capability to follow a level of instructions more complicated than "detailed." In determining the plaintiff's RFC, the ALJ limited the plaintiff to performing "detailed" instructions, which is a reasoning level of two. The plaintiff's past work requires a reasoning level of three and higher which appears to be beyond the plaintiff's capabilities as found by the ALJ. Thus, it appears that the DOT's requirements for a reasoning level of three require a capability to follow a level of instructions more complicated than "detailed."

With respect to the Commissioner's assertion that the ALJ was not required to determine whether the vocational expert's testimony was consistent with the DOT because the ALJ found that the plaintiff could perform his past relevant work, the court notes that SSR 00-4P is specifically directed at both steps 4 and 5. <u>See</u> SSR 00-4p. The ruling specifically requires the ALJ to ask whether the vocational expert's testimony is consistent with the DOT and obtain a reasonable explanation if evidence appears to conflict with the DOT. <u>See</u> SSR 00-4p.

In her testimony, the vocational expert stated that the five occupations held by the plaintiff are all defined and classified by the DOT. (Tr. 413). Therefore, the determination by the vocational expert that the plaintiff can perform past relevant work must be based on how these jobs are generally performed in the national economy as set forth in the DOT.

Given the plaintiff's RFC as determined by the ALJ that the most the plaintiff can do is follow detailed instructions, it appears that the plaintiff may be unable to perform her past relevant work, given that the job requirements as set forth in the DOT appear to require an ability to follow a higher level of instructions than merely detailed instructions. The court must defer to an ALJ's decision if it is supported by "substantial evidence," but here there is an

unresolved inconsistency in the evidence. The case is remanded, therefore, so that the ALJ can determine whether the job requirements of the jobs identified by the vocational expert are, in fact, consistent with the definitions of the DOT and the plaintiff's limitations. See Prochaska, 454 F.3d at 731.

**4.    Whether the ALJ Submitted a Proper Hypothetical Question to the Vocational Expert.**

The plaintiff maintains that the ALJ did not ask the vocational expert a proper hypothetical question. In determining the RFC, the ALJ concluded that the plaintiff retained the ability to alternate between standing, sitting and walking every hour. The ALJ asked the vocational expert about the need to sit and stand every hour, but he failed to include the walking component. The Commissioner asserts that the ALJ "inadvertently" failed to include the need to alternate standing and sitting with walking in the hypothetical question, arguing that such a failure did not impact the ALJ's determination that the plaintiff could perform her past relevant work. (Memorandum in Support of the Commissioner's Decision at 8).

In Kasarsky v. Barnhart, 335 F.3d 539, 543 (7th Cir. 2003), the court held that "to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the plaintiff suffers. Otherwise, the vocational testimony will not reveal whether there are jobs in the national economy that a person like the plaintiff could perform. . .." Here, the court is left to ponder what the vocational expert would have concluded if the walking limitation had been incorporated in the hypothetical question. As persuasively noted by the plaintiff, being on one's feet and the ability to walk are two different accommodations. The court concludes that the flawed hypothetical must be addressed on remand. On remand, in presenting a hypothetical to the vocational expert, the ALJ must incorporate all of the plaintiff's limitations as determined in the RFC.

**5.** **Whether the ALJ Improperly Evaluated the Plaintiff's Residual Functional Capacity Pursuant to Social Security Ruling 96-8p.**

The plaintiff asserts that the ALJ failed to explain how he arrived at his finding that the plaintiff retained the ability to alternate between standing, walking and sitting every hour, as opposed to some lesser period of time. The plaintiff also asserts the ALJ failed to analyze the plaintiff's need to elevate her leg about twice a week for six hours (Tr. 393, 406), as well as her allegations and the doctors' assessment of fatigue. (Tr. 400). The plaintiff further contends that the ALJ ignored the plaintiff's diagnoses of polyuria (frequent urination) and other bowel abnormalities which, in combination with other impairments, could have prevented her from performing her past relevant work.

The Commissioner maintains that the ALJ reasonably relied on the medical evidence in determining that the plaintiff had to alternate between standing, walking and sitting every hour. He points out that the plaintiff's most recent MRI, left knee and left femur x-rays and physical examinations showing mostly normal findings. The Commissioner asserts that the medical evidence does not support the plaintiff's contention that she needed to elevate her leg and that, although she alleged fatigue because of her hepatitis C, that condition was controlled with medication. He also notes that the ALJ relied on the plaintiff's daily activities.

The legal standard for RFC is set forth in <u>Patterson v. Barnhart</u>, 428 F. Supp. 2d at 885-86. Residual functional capacity is the most an individual can do despite his impairments, on a regular and continuing basis, i.e., eight hours a day for five days a week, or an equivalent work schedule. In determining a plaintiff's RFC, the ALJ must consider both the "exertional" and "non-exertional" capacities for the individual. Exertional capacity refers to the plaintiff's abilities to perform seven strength demands: sitting, standing, walking, lifting, carrying, pushing and pulling. Nonexertional capacity includes all work-related functions that do not depend on the

individual's physical strength: postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking) and mental (e.g., understanding and remembering instructions and responding appropriately to supervision) activities. Id. at 886.

The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. The ALJ must also explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. See SSR 96-8p.

Given the court's conclusion with regards to the mischaracterization of Dr. Ortell's medical evidence, the failure to adequately assess the plaintiff's credibility and the failure to ask an appropriate hypothetical question, the ALJ's determination of RFC is compromised as well. For example, the vocational expert opined that if the limitations set forth in Dr. Ortell's assessment were adopted, the plaintiff would be precluded from any competitive employment. (Tr. 415). The vocational expert further testified that the plaintiff would be precluded from work if she needed to sit or stand every 20 to 25 minutes. On remand, the ALJ should discuss how he arrived at his residual functional capacity findings, including why reported symptom-related functional limitations and restrictions can or cannot be reasonably accepted as consistent with the medical and other evidence pursuant to SSR 96-8p.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's appeal be and hereby is **granted**.

**IT IS FURTHER ORDERED** that this case be and hereby is **remanded** to the Commissioner of the Social Security Administration for further proceedings consistent with this decision.

**IT IS ALSO ORDERED** that the Clerk of Court be and hereby is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 11th day of January, 2008.

BY THE COURT:

_____s/ Patrcia J. Gorence_____
PATRICIA J. GORENCE
United States Magistrate Judge